KANTOR, DAVIDOFF, MANDELKER,
TWOMEY & GALLANTY, P.C.
Daniel S. Kokhba
Alan T. Gallanty
Carrie E. Anderer
*Attorneys for Plaintiff*
51 East 42nd Street, 17th Floor
New York, New York 10017
(212) 682-8383

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-------------------------------------------------------------------X
DERRICK RANDALL,

                                  Plaintiff,

                                                            Civ. No.:

           - against -                             **COMPLAINT AND**
                                                      **JURY DEMAND**

RUTGERS, THE STATE UNIVERSITY OF NEW
JERSEY; MICHAEL RICE; TIMOTHY PERNETTI;
JAMES MARTELLI; JANINE PURCARO; MARK P.
HERSHHORN and ROBERT L. BARCHI,

                                    Defendants.
-------------------------------------------------------------------X

         Plaintiff DERRICK RANDALL ("Plaintiff" or "Derrick"), by and through his attorneys,

KANTOR, DAVIDOFF, MANDELKER, TWOMEY & GALLANTY, P.C., complaining of

RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY; MICHAEL RICE; TIMOTHY

PERNETTI; JAMES MARTELLI; JANINE PURCARO; MARK P. HERSHHORN AND

ROBERT L. BARCHI (referred to collectively as "Defendants," except where separately

identified) alleges as follows:

## PRELIMINARY STATEMENT

1.      This case centers on one of the most outrageous college basketball abuse scandals in history.

2.      Derrick, a highly promising player on the Rutgers men's basketball team, was chronically and heinously targeted and abused, both physically and psychologically, by Michael Rice, his head coach.

3.      Meanwhile, Defendants, either directly or through their agents, breached their duties to Derrick by allowing this pervasive abuse to occur, continue and proliferate.

4.      Such abusive conduct, and Defendants' knowingly and/or recklessly allowing it to continue, is reprehensible enough on its own.

5.      However, Rutgers was also on notice that Derrick had been diagnosed with documented learning disabilities and related issues, and Rutgers had explicitly agreed to make special accommodations to address Derrick's needs.

6.      Not only did Rutgers fail to provide such accommodations, but knowing of Derrick's disabilities and related issues, and exhibiting deliberate indifference to the impact of Coach Rice's behavior, Defendants allowed Derrick to be subjected to the outrageous and continuous abuse perpetrated by Coach Rice.

7.      This abuse was documented through video footage of team practices, publicly released by ESPN's television program, "Outside the Lines" in April 2013, which reflected Derrick and other players being violently grabbed, kicked, shoved and berated by Coach Rice.

8.      It was not until the public release of this video, and the national attention the story received, that the University was compelled to publicly address the outrageous, and until then, concealed abuse that was being committed by Coach Rice against Derrick and others.

9.      On April 5, 2013, Rutgers University President Robert Barchi admitted that (i) there was a failure of process; (ii) student-athletes may have been harmed; (iii) Coach Rice chronically and pervasively abused his players; and (iv) President Barchi personally knew of the abuse since the fall of 2012:

> I apologize to any student-athletes on the team who may have been personally harmed. The kind of chronic and pervasively abusive behavior demonstrated on that video is unacceptable . . . I was deeply disturbed by the behavior that the video revealed which was much more abusive and pervasive than I had understood it to be.

10.      On or about April 3, 2013, Coach Rice publicly stated:

> [There] was no explanation for what's on those films because there's no excuse for it, I was wrong. I want to tell everybody who's believed in me that I'm deeply sorry for the pain and hardship I've caused.

11.      On or about April 3, 2013, Rutgers Athletic Director Timothy Pernetti publicly stated:

> Dismissal and corrective action were debated in December [2012] and I thought it was in the best interest of everyone to rehabilitate, but I was wrong.

12.      On or about April 4, 2013, Assistant Coach James Martelli publicly stated:

> I am sickened that as an assistant coach, I contributed in any way to an unacceptable culture.

13.      On or about November 8, 2013, during an interview aired on the television program "20/20," Coach Rice further acknowledged bullying his players, and that he had a "chip on his shoulder." When asked how he would defend his abusive conduct, he stated, "You don't. It is unacceptable."

14.     New Jersey Governor Chris Christie described Coach Rice as an "animal," and further stated, "The way these young men were treated by the head coach was completely unacceptable and violates the trust those parents put in Rutgers University."

15.     New Jersey State Senator Barbara Buono stated that then when she viewed the video it was a "shock the conscience moment."

16.     Hall of Fame college basketball coach John Thompson characterized Coach Rice's behavior as "child abuse."

17.     On or about August 4, 2013, Eddie Jordan, the new and current Rutgers' varsity men's basketball coach and Defendants' agent, acknowledged that players abused by Coach Rice suffered psychological damage: "We reached out to kids that had some psychological damage from what had occurred and we needed to get them to trust again."

18.     Derrick has suffered, and continues to suffer, from the abuse to which he was subjected, and to experience substantial damage to his emotional well-being and his basketball career caused by such abuse and Defendants' failure to prevent it.

## JURISDICTION AND VENUE

19.     This is a civil action based upon Defendants' violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.* ("Rehabilitation Act"); Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, *et seq.* ("ADA"); 42 U.S.C. § 1983, *et seq.*; the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1, *et seq.*; and other common law causes of action.

20.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1332 and under 28 U.S.C. § 1343; Plaintiff's claims arise under 42 U.S.C. § 1983, the

Rehabilitation Act and the ADA. The supplemental jurisdiction of the Court pursuant to 28 U.S.C. § 1367 is invoked over state and local law causes of action.

21.     The amount in controversy is to be determined at trial but is claimed to exceed the jurisdictional amount of $75,000.

22.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391 (b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in the District of New Jersey, and Defendants are subject to personal jurisdiction in this District.

23.     On or about May 24, 2013, Plaintiff, through a letter from counsel, provided Rutgers with statutory notice as may be required pursuant to the New Jersey Tort Claims Act (N.J.S.A. § 59:1-1, *et seq*.).

24.     On or about June 25, 2013, Plaintiff, through counsel, provided further notice of the claims asserted herein by completing and submitting a supplemental form as provided by Rutgers.

**PARTIES**

25.     Derrick is a resident of the State of New York.

26.     Defendant Rutgers, The State University of New Jersey ("Rutgers" or "University"), is a public university authorized under the laws of the State of New Jersey and operates under the supervision of the State Board and/or the Commissioner of Education of the State of New Jersey.

27.     Defendant Michael Rice ("Coach Rice" or "Rice") was an NCAA Division I head basketball coach at Rutgers and was an agent, servant, and/or employee of Rutgers. Coach Rice was named head coach of the Rutgers men's basketball team on May 6, 2010, and was terminated from his position on April 3, 2013.

28.     Defendant Timothy Pernetti ("Pernetti") was an NCAA Division I Director of Intercollegiate Athletics at Rutgers and was an agent, servant, and/or employee of Rutgers. Pernetti was named athletic director on April 1, 2009 and resigned from his position on April 5, 2013.

29.     Defendant James Martelli ("Coach Martelli" or "Martelli") was an NCAA Division I assistant basketball coach at Rutgers and was an agent, servant, and/or employee of Rutgers. Coach Martelli was hired as an assistant coach of the Rutgers men's basketball team in May 2010 and resigned from his position on April 4, 2013.

30.     Defendant Janine Purcaro ("Purcaro") is the current Chief Financial Officer for Intercollegiate Athletics at Rutgers and is an agent, servant, and/or employee of Rutgers. Purcaro has held this title since September 26, 2011.

31.     Defendant Mark P. Hershhorn ("Hershhorn") served as Chairman of the Rutgers University Board of Governors Committee on Intercollegiate Athletics and is a current member of the Rutgers Board of Governors. He is an agent, servant, and/or employee of Rutgers.

32.     Defendant Robert L. Barchi ("President Barchi") is the current President of Rutgers. He has served as President since September 1, 2012, and is an agent, servant, and/or employee of Rutgers.

## FACTUAL BACKGROUND

## RUTGERS RECRUITS DERRICK – A STUDENT WITH DIAGNOSED LEARNING DISABILITIES AND A HIGHLY RATED BASKETBALL PLAYER

33.     Derrick was a student and varsity basketball player on the Rutgers men's varsity basketball team from the fall of 2011 through the spring of 2013.

34.     Prior to Derrick's recruitment by Rutgers and his enrollment at the University in the fall of 2011, Derrick was a highly rated high school basketball player.

35.     In high school, Derrick was ranked the No. 17 center in his class by Scout.com and the country's No. 26 power forward prospect by Scout.com and ESPN.com.

36.     Notably, Derrick scored a team high 20 points for the New York City All Stars in a 73-56 win over United China at the World Basketball Festival; competed internationally in the summer of 2010 in Turkey for the New York City Nike All Star team; and competed at the 2010 NBA Players Association Top 100 Camp.

37.     Derrick was diagnosed with learning disabilities at an early age. His diagnosis has resulted in special accommodations being made to address Derrick's disabilities. As a result of his disabilities, Derrick experienced the lack of confidence and self-esteem that are attendant thereto.

38.     When Derrick was recruited by Rutgers, the University was made aware of Derrick's disabilities and related issues and specifically agreed to make special accommodations to address Derrick's needs.

39.     Derrick's father, Brian Randall, provided Rutgers with Derrick's Individualized Education Program which describes the special education and related services specifically designed to meet Derrick's unique requirements.

40.     Brian Randall met with Coach Rice when Derrick first arrived at Rutgers and informed Coach Rice that Derrick needed someone to talk to and to help him out. Coach Rice represented to Brian Randall that Rutgers would provide Derrick with the resources he needed, including a psychologist, and assured him in particular that the University would look out for Derrick's psyche.

41.     Derrick thus enthusiastically enrolled at Rutgers as a highly promising athlete with recognized prospects for a successful college career and a professional career thereafter, but also as a student-athlete with special educational and related needs that Rutgers had agreed to make special accommodations to address.

## A CASE OF ABUSE

42.     Defendants, directly and/or through their agents, willfully, recklessly,  negligently and with deliberate indifference, placed Derrick in a hostile environment in which he was regularly and continuously subjected to physical, mental, verbal and emotional abuse of the most outrageous nature.

43.     Such chronic, abusive and damaging conduct occurred after Derrick joined the Rutgers basketball team as a freshman, and continued throughout his sophomore season.

44.     The culmination of this abuse was marked by the public release of a compilation of raw video clips on April 2, 2013 by ESPN's television program, "Outside the Lines," which revealed Derrick and others being subjected to grossly demeaning behavior at the hands of their coach during the team's practices (the "Video").

45.     The Video shows Coach Rice grabbing, shoving and kicking players and hurling basketballs directly at their heads and bodies. Coach Rice can also be heard berating his players with abusive and profane language including homophobic slurs.

46.     According to Eric Murdock, former Director of Basketball Player Development for Rutgers from 2010 to 2012 ("Murdock"), "It often got worse after the camera was shut off."

47.     The Rutgers administration, including at least Messrs. Barchi, Hershhorn and Pernetti and Ms. Purcaro, as well as Assistant Coach Martelli, knew of this abusive conduct, yet

stood by and allowed it to continue as Derrick regularly and continuously suffered more and more damage to his health, self-esteem, well-being and career prospects.

48.    These individual Defendants ignored reports and complaints and deliberately concealed evidence of Coach Rice's pervasive and continuous abusive conduct from Derrick's family and the public at large, in blatant disregard of their obligations and responsibilities to Derrick, and undoubtedly to protect Rutgers' multi-million dollar athletics program and its impending entry into the Big Ten conference with the millions of dollars in revenue that opportunity presented.

49.    The outrageous, intimidating and abusive conduct to which Derrick was subjected included Coach Rice hurling basketballs at his head and legs and hitting, grabbing, striking and shoving him.

50.    Coach Rice verbally, mentally, and emotionally abused Derrick through violent screaming, cursing and other humiliation tactics, including the use of homophobic slurs and other shockingly derogatory and discriminatory name calling.

51.    A photograph of Coach Rice grabbing Derrick by the neck and face on the bench during a game, with Derrick looking completely lost and helpless, speaks volumes, as does the Video of such abusive behavior.

52.    Such continuous and admittedly abusive conduct, and Defendants' knowingly and/or recklessly allowing it to continue, is reprehensible enough on its own. However, when combined with the fact that Rutgers was apprised of Derrick's disabilities and related issues and agreed to make special modifications to accommodate his needs, leaving Derrick to somehow fend for himself against the person with complete authority and control over him and his athletic scholarship -- his head coach -- truly is conduct of the most egregious and damaging nature.

53.     Defendants acted with deliberate indifference in circumstances in which they could and should have exercised substantial and reasonable control over both Coach Rice and the environment in which Coach Rice committed his abuse against Derrick.

54.     As a result of Coach Rice's abuse and the hostile and violent environment Coach Rice created, Derrick suffered physically, mentally and emotionally.

55.     The continuous abuse left Derrick in a constant and debilitating state of anxiety and fear. He felt completely helpless under the authority of Coach Rice. He lost all confidence and, not surprisingly, did not and could not know how to deal with Coach Rice's abuse. As a result, Derrick shut down more and more.

56.     Derrick tried to just go through the motions, believing that he had no choice but to be obedient and to tolerate and endure the abuse of Coach Rice.

57.     Incredibly, in a system in which assistant coaches were assigned to each of the players to serve as "life coaches" for the purpose of assisting the student-athletes in coping with academic and personal matters, Derrick's special learning and related needs were entrusted to the team videographer.

58.     What is more, Coach Rice frequently engaged in mind games with Derrick, such as asking him if he was ready to go into a game and on receiving an affirmative answer, leaving Derrick on the bench without any explanation.

59.     On several occasions, Coach Rice stared directly at Derrick with an unmistakable look of hatred.

60.     With respect to Coach Rice's abuse, the assistant coaches told Derrick and the other players to deal with it.

61.     Assistant Coach Martelli not only stood by while Coach Rice abused his players, but Coach Martelli himself participated in, and contributed to, such abusive behavior.

62.     Eventually, Derrick lost all confidence in himself and in his athletic abilities, which impacted his ability to perform both on and off the court.

63.     As a result of such abuse, Derrick was compelled to leave Rutgers and to close the book on his dream of playing on the University's basketball team.

64.     Meanwhile, upon information and belief, Coach Rice and Pernetti received severance packages including at least $475,000 and $1,200,000, respectively; Rutgers moved to the Big Ten Conference; and Derrick and other players were left to live with the damage caused by two traumatic seasons fending for themselves against Coach Rice's abuse.

65.     Derrick has incurred substantial damages as a result of the continuous physical, mental, verbal and emotional injuries suffered, as well as lost economic opportunities and earning potential. In addition, Derrick is entitled to punitive damages and attorneys' fees.

66.     Aggression and abuse proliferate where they are tolerated, and Defendants admittedly tolerated Coach Rice's aggression and abuse to the severe detriment of Derrick Randall.

## THE VIDEO AND THE AFTERMATH

67.     Upon information and belief, on or about July 11, 2012, counsel for Murdock sent a letter to Rutgers and Pernetti, which *inter alia*, claimed that Murdock was wrongly terminated from his position in retaliation for inquiries and discussions with others regarding alleged misconduct by Coach Rice.

68.     Upon information and belief, on or about November 26, 2012, Murdock met with Pernetti and provided him with a copy of a DVD containing video footage taken at multiple team basketball practices showing Coach Rice abusing his players.

69.     Upon information and belief, on or about November 26, 2012, Pernetti informed President Barchi about the Video and the nature of its contents.

70.     Upon information and belief, on or about November 27, 2012, Rutgers hired John Lacey, an attorney at Connell Foley LLP and an executive committee member of Rutgers School of Law, to conduct an internal investigation into the contents of the Video and to issue a report on his findings.

71.     Upon information and belief, on or about December 13, 2012, Pernetti announced that Coach Rice would be suspended for three games and fined $50,000, without any disclosure of Coach Rice's abusive behavior to the public, let alone to Derrick's family.

72.     Upon information and belief, in December, 2012, Hershhorn viewed the Video. Hershhorn did not take the matter to the full Board of Governors, nor did he take any other action.

73.     On or about December 13, 2012, John Lacey issued an internal report ("the Report"). The Report provides, in pertinent part:

> Coach Rice was previously counseled by AD Pernetti concerning his treatment of others. Additionally, some of Coach Rice's assistants felt compelled to speak with him about his use of offensive language and his negative treatment of certain players. (pp. 4-5).
>
> ***
>
> [Coach Rice's] behavior toward players included insulting language and outbursts such as pushing a player. (p. 14).
>
> ***

[Murdock's] complaint was not a complete surprise to AD Pernetti. Indeed, AD Pernetti had already personally taken disciplinary action against Coach Rice on two prior occasions in early 2012 for some of the same behavior cited by [counsel for Murdock]. (p. 16).

\*\*\*

[On November 26, 2012], Mr. Pernetti and Ms. Purcaro met with Coach Rice. They showed the DVD clips to Coach Rice and AD Pernetti expressed dismay as to certain clips that appeared to show Coach Rice insulting, demeaning and, in some cases, coming into overly aggressive physical contact with Rutgers men's basketball players. This conduct included referring to players as "pussies," "idiots," "fags," "faggots," and "bitch." These words were often preceded by the word "fucking." (p. 21).

\*\*\*

[T]he clips on the DVD showed Coach Rice (a) kicking a basketball on three separate occasions; (b) throwing a basketball at or toward basketball players; and (c) passing a basketball with two hands by casting it as the feet or legs of a player. (p. 24).

\*\*\*

[I]t did appear that some of the actions by Coach Rice included physical contact with a player that could not be justified. (p. 24).

\*\*\*

[Connell Foley LLP] received no evidence showing that it is acceptable for a coach to kick a player in the buttocks out of frustration, to hurl a basketball at a player in anger because a player made a mental mistake during a drill, or to slap a player repeatedly from behind with a blocking pad after the player has completed the drill sequence. The actions recited above coincide with specific actions by Coach Rice that were depicted on the DVD supplied by [Murdock's attorney] as well as on the videos [reviewed by Connell Foley LLP]. (p. 33).

\*\*\*

[T]hese improper actions, even if sometimes done in jest, constitute grossly demeaning behavior directed at players and occasionally at coaches. (p. 33).

13

***

> [T]his behavior by a coach has no place in a college basketball
> program, especially where some actions, when viewed in context,
> appear to be taken in anger or frustration. A reasonable person
> could interpret some of this behavior "as being evidence of intent
> to cause physical harm" to another individual. (pp. 33-34).

74.     Despite the clear evidence of misconduct, on or about December 29, 2012, Coach Rice was allowed to resume his coaching duties and no disclosure of his abuse against his players was made to the players' families or to the public.

75.     Defendants' conduct after the issuance of the Report and Coach Rice's suspension confirms that Defendants did not make any real effort to help those players who had been subjected to Coach Rice's abuse, and reflected Defendants' deliberate indifference to the hostile and abusive environment to which University students, including Derrick, were being subjected.

76.     On or about April 2, 2013, ESPN's television program, "Outside the Lines," aired the violent and explosive Video.

77.     On or about April 2, 2013, President Barchi finally viewed the Video for the first time, despite his awareness of its existence since at least December, 2012.

78.     But for ESPN disclosing the Video, it is likely that President Barchi still would not have viewed it, Rutgers would have continued its policy of deliberate indifference to Coach Rice's behavior, and Coach Rice would have remained in his coaching position and continued to abuse Derrick and others.

79.     Only after the release of the Video and ensuing public outrage, (i) on or about April 3, 2013, Coach Rice was fired; (ii) on or about April 4, Martelli resigned; and (iii) on or about April 5, 2013, Pernetti resigned.

**RULES AND CODES OF ETHICS:**
**THE RUTGERS ATHLETICS OFFICE OF COMPLIANCE,**
**THE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION**
**AND THE NATIONAL ASSOCIATION OF BASKETBALL COACHES**

80.     The Rutgers Athletics Office of Compliance website page states, in pertinent part:

> As a member of the National Collegiate Athletic Association ("NCAA"), Rutgers University must abide by NCAA rules and regulations as they relate to all aspects of its athletic program. In addition to ensuring that all of its coaches, administrators, University faculty and staff, and student-athletes are aware of and following NCAA rules, Rutgers is also responsible for the actions of any individual who is a "representative of athletic interests."

> ***

> The Principle of Institutional Control and Responsibility (referred to as "institutional control") is the principle upon which compliance with all other principles, rules and regulations depends. This principle defines each school's responsibility to monitor compliance with NCAA rules. This principle is the foundation upon which every NCAA institution's compliance program is built.

> ***

> The Principle of Institutional Control and Responsibility:

> It is the responsibility of each member institution to control its intercollegiate athletics program in compliance with the rules and regulations of the Association. The institution's chief executive officer is responsible for the administration of all aspects of the athletics program, including approval of the budget and audit of all expenditures.

> *The institution's responsibility for the conduct of its intercollegiate athletics program includes responsibility for the actions of its staff members and for the actions of any other individual or organization engaged in activities promoting the athletics interests of the institution.*

81.     The National Collegiate Athletic Association ("NCAA") 2012-2013 Division I

Manual provides, in pertinent part:

**2.1.1 Responsibility for Control. [\*]** It is the responsibility of each member institution to control its intercollegiate athletics program in compliance with the rules and regulations of the Association. The institution's president or chancellor is responsible for the administration of all aspects of the athletics program, including approval of the budget and audit of all expenditures *(Revised: 3/8/06)*.

**2.1.2 Scope of Responsibility. [\*]** The institution's responsibility for the conduct of its intercollegiate athletics program includes responsibility for the actions of its staff members and for the actions of any other individual or organization engaged in promoting the athletics interests of the institution.

**2.2.3 Health and Safety. [\*]** It is the responsibility of each member institution to protect the health of, and provide a safe environment for, each of its participating student-athletes. *(Adopted 1/10/95)*.

**2.2.4 Student-Athlete/Coach Relationship. [\*]** It is the responsibility of each member institution to establish and maintain an environment that fosters a positive relationship between the student-athlete and coach. *(Adopted 1/10/95)*.

82. The Code of Ethics of the National Association of Basketball Coaches ("NABC")

provides, in pertinent part:

1. Coaches are accountable to the highest standard of honesty and integrity. All practices should be consistent with the rules of the game and the educational purposes of the institution.

\*\*\*

3. Coaches treat all persons with dignity and respect providing a model of fair play and sportsmanship.

\*\*\*

6. Coaches have a primary concern for the health, safety and personal welfare of each athlete. The athlete's education is also held foremost.

83.     Defendants, directly and/or through their agents, blatantly violated the aforementioned rules and/or codes of ethics. By doing so, they directly and/or through their agents continuously and seriously harmed Derrick.

## FIRST CAUSE OF ACTION

### NEGLIGENCE
### AGAINST ALL DEFENDANTS

84.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 83 as if fully set forth herein.

85.     Defendants, directly and/or through their agents, owed a duty of care to Plaintiff.

86.     Defendants, directly and/or through their agents, breached their duty of care.

87.     Defendants, directly and/or through their agents, failed to exercise a degree of care for the safety of Plaintiff, which a prudent person would exercise under the circumstances.

88.     Defendants' negligent and/or palpably unreasonable conduct proximately caused Plaintiff harm.

89.     Defendants, directly and/or through their agents, should have foreseen, under the attending circumstances, that the natural and probable consequences of their acts and/or omissions would have caused serious injury to Plaintiff.

90.     Plaintiff's injuries and damages are permanent and substantial.

91.     As a result, Plaintiff is entitled to recover from Defendants, jointly and severally, compensatory damages, punitive damages, attorneys' fees, costs, disbursements and such other relief as the Court deems just and proper.

**SECOND CAUSE OF ACTION**

**NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION AGAINST RUTGERS, PERNETTI, BARCHI, PURCARO, AND HERSHHORN**

92.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 91 as if fully set forth herein.

93.     Defendants Rutgers, Pernetti, Barchi, Purcaro and Hershhorn (the "Supervising Defendants") directly and/or through their agents, were negligent and/or acted in a palpably unreasonable manner in hiring, retaining, training and supervising Rice and Martelli.

94.     Rice's and Martelli's conduct was committed during the course of, and within the scope of, their employment at Rutgers.

95.     Supervising Defendants, directly and/or through their agents, had a duty to use reasonable care in selecting competent and fit employees for the work assigned to them.

96.     Supervising Defendants, directly and/or through their agents, were also bound to refrain from retaining the services of unfit employees.

97.     Supervising Defendants were provided with notice of Rice's outrageous conduct and his propensity for such outrageous conduct on numerous occasions, but failed to adequately address such behavior, further causing harm to Plaintiff.

98.     Supervising Defendants, directly and/or through their agents, knew or had reason to know of the particular unfitness, incompetence and/or dangerous attributes of Rice and Martelli.

99.     Supervising Defendants, directly and/or through their agents, should have reasonably foreseen that hiring and/or retaining Rice and Martelli created a risk of harm to others, including Plaintiff.

100.    Upon information and belief, during the hiring process and/or course of employment, Supervising Defendants, directly and/or through their agents, had actual knowledge that Rice had inappropriate or dangerous characteristics, attributes or tendencies that made him an unacceptable candidate for his position.

101.    Reasonable investigation would have disclosed Rice's and Martelli's undesirable characteristics, attributes or tendencies.

102.    As a result of Supervising Defendants' conduct, Plaintiff was exposed to Rice, who continuously harmed him, and Martelli, who stood by Rice and admittedly contributed to Rice's abusive behavior.

103.    Supervising Defendants' negligent and/or palpably unreasonable conduct proximately caused Plaintiff's injuries and damages.

104.    Plaintiff's injuries and damages are permanent and substantial.

105.    As a result, Plaintiff is entitled to recover from Supervising Defendants, jointly and severally, compensatory damages, punitive damages, attorneys' fees, costs, disbursements and such other relief as the Court deems just and proper.

## THIRD CAUSE OF ACTION

### GROSS NEGLIGENCE
### AGAINST ALL DEFENDANTS

106.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 105 as if fully set forth herein.

107.    Defendants, directly and/or through their agents, owed a duty of care to Plaintiff.

108.    Defendants, directly and/or through their agents, breached their duty of care to Plaintiff.

109.    Defendants, directly and/or through their agents, failed to exercise slight care or diligence and/or acted in a palpably reasonable manner despite clear notice of outrageous and dangerous conduct causing harm to Derrick and others.

110.    Defendants' act and/or failure to act created an unreasonable risk of harm to Plaintiff.

111.    The consequences of Defendants' conduct could and should reasonably have been foreseen.

112.    Defendants' grossly negligent conduct proximately caused Plaintiff's injuries and damages.

113.    Plaintiff's injuries and damages are permanent and substantial.

114.    As a result, Plaintiff is entitled to recover from Defendants, jointly and severally, compensatory damages, punitive damages, attorneys' fees, costs, disbursements and such other relief as the Court deems just and proper.

## FOURTH CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY
## AGAINST ALL DEFENDANTS

115.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 114 as if fully set forth herein.

116.    Plaintiff placed trust and confidence in Defendants directly and/or through their agents.

117.    A fiduciary relationship existed between Plaintiff and Defendants.

118.    Defendants held a dominant and superior position over Plaintiff.

119.    Defendants, directly and/or through their agents, had a duty to act for and/or give advice for the benefit of Plaintiff.

120.    Defendants, directly and/or through their agents, owed a duty of loyalty to Plaintiff.

121.    Defendants, directly and/or through their agents, owed a duty to exercise reasonable skill and care with respect to Plaintiff.

122.    Defendants, directly and/or through their agents, breached their fiduciary duties and/or acted in a palpably unreasonable manner, causing Plaintiff harm.

123.    Plaintiff's injuries and damages are permanent and substantial.

124.    As a result, Plaintiff is entitled to recover from Defendants, jointly and severally, compensatory damages, punitive damages, attorneys' fees, costs, disbursements and such other relief as the Court deems just and proper.

## FIFTH CAUSE OF ACTION

### ASSAULT AND BATTERY
### AGAINST RICE

125.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 124 above as if fully set forth herein.

126.    Rice touched or struck Plaintiff without justification and against Plaintiff's will and/or consent.

127.    Rice intended to cause harmful or offensive contact with Plaintiff.

128.    Rice intended to cause imminent apprehension of harmful or offensive contact with Plaintiff, which put Plaintiff in such imminent apprehension.

129.    Plaintiff suffered emotional and psychological damage as a result of Rice's intentional actions.

130.    As a result, Plaintiff is entitled to recover from Defendant Rice compensatory damages, punitive damages, attorneys' fees, costs, disbursements and such other relief as the Court deems just and proper.

## SIXTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## AGAINST RICE

131.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 130 above as if fully set forth herein.

132.    Defendant Rice acted intentionally and/or recklessly.

133.    Defendant Rice's actions were extreme and outrageous.

134.    Defendant Rice acted recklessly and in deliberate disregard of a high degree of probability that his actions would cause Plaintiff emotional distress.

135.    Defendant Rice's actions were the proximate cause of Plaintiff's emotional distress.

136.    Plaintiff suffered and continues to suffer severe emotional distress as a result of Defendant Rice's actions.

137.    As a result, Plaintiff is entitled to recover from Defendant Rice compensatory damages, punitive damages, attorneys' fees, costs, disbursements and such other relief as the Court deems just and proper.

## SEVENTH CAUSE OF ACTION

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## AGAINST ALL DEFENDANTS

138.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 137 as if fully set forth herein.

139.    Defendants, directly and/or through their agents, owed a duty of care to Plaintiff.

140.    Defendants directly, and/or through their agents, breached their duty of care owed to Plaintiff.

141.    Defendants' negligent and/or palpably unreasonable conduct proximately caused Plaintiff harm.

142.    Plaintiff suffered and continues to suffer severe emotional distress.

143.    Plaintiff's injuries and damages are permanent and substantial.

144.    As a result, Plaintiff is entitled to recover from Defendants, jointly and severally, compensatory damages, punitive damages, attorneys' fees, costs, disbursements and such other relief as the Court deems just and proper.

**EIGHTH CAUSE OF ACTION**

**INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
AGAINST ALL DEFENDANTS**

145.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 144 as if fully set forth herein.

146.    Plaintiff had a reasonable expectation of economic advantage or benefit resulting from his continued development and exposure as a highly-rated Division I basketball player.

147.    Defendants, directly and/or through their agents, had knowledge of such expectancy of economic advantage.

148.    Defendants wrongly, without justification and in a palpably unreasonable manner, directly and/or through their agents, interfered with Plaintiff's expectancy of advantage or benefit.

149.     In the absence of such interference, it is reasonably probable that Plaintiff would have realized his economic advantage or benefit.

150.     Plaintiff sustained damages as a result of such interference.

151.     As a result, Plaintiff is entitled to recover from Defendants, jointly and severally, compensatory damages, punitive damages, attorneys' fees, costs, disbursements, and such other relief as the Court deems just and proper.

## NINTH CAUSE OF ACTION

## NEW JERSEY LAW AGAINST DISCRIMINATION
## AGAINST ALL DEFENDANTS

152.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 151 as if fully set forth herein.

153.     The New Jersey Law Against Discrimination prohibits, *inter alia*, practices of discrimination because of mental disability. N.J.S.A. § 10:5-1, *et seq*.

154.     Plaintiff has been diagnosed with learning disabilities.

155.     Plaintiff is a member of a protected class.

156.     Defendants, directly and/or through their agents, were aware of Plaintiff's learning disabilities and other special needs and agreed to make special accommodations.

157.     Defendants, directly and/or through their agents, engaged in intentional discrimination against Plaintiff because of his protected class, and failed to accommodate his needs despite agreeing to do so.

158.     Defendants, directly and/or through their agents, failed to make reasonable modifications in policies, practices, or procedures that would accommodate Plaintiff's learning disabilities and related needs – modifications that were duly requested and agreed to be provided.

159.    Defendants' conduct constitutes a violation of the New Jersey Law Against Discrimination.

160.    As a result, Plaintiff is entitled to recover from Defendants, jointly and severally, compensatory damages, punitive damages, attorneys' fees, costs, disbursements, and such other relief as the Court deems just and proper.

**TENTH CAUSE OF ACTION**

**TITLE II OF THE AMERICANS WITH DISABILITIES ACT
AGAINST RUTGERS**

161.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 160 as if fully set forth herein.

162.    Title II of the Americans with Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

163.    Plaintiff is a qualified individual with a disability.

164.    Rutgers maintains the following policy but has failed honor it with regard to Derrick:

> The community of Rutgers University is committed to providing
> equal educational access for individuals with disabilities in
> accordance with Section 504 of the Rehabilitation Act of 1973,
> Section 508 of the Rehabilitation Act of l998, and the Americans
> with Disabilities Act Amendments (ADAA) of 2008.    An
> individual with a disability who is qualified for admission will
> have the same access to programs, services and activities as all
> other students. Rutgers University will make reasonable
> modifications to its policies, practices, and procedures unless doing
> so would fundamentally alter the nature of the service, program, or
> activity, or pose an undue administrative or financial burden.  The

25

university will provide services in a manner that promotes
independence and inclusion in all aspects of university life.

165.    Through Defendant's actions, Plaintiff was excluded from participation in, and
denied benefits of, the Rutgers basketball program and a Rutgers education and was otherwise
discriminated against because of his disability.

166.    Defendant, because of Plaintiff's disabilities, directly and/or through its agents,
denied Plaintiff reasonable modifications to accommodate Plaintiff's learning disability and
related needs, and/or failed to engage in the evaluative process for reasonable modifications,
and/or denied Plaintiff the opportunity to participate in or benefit from Defendant's services,
programs and activities, and/or subjected Plaintiff to discrimination, and/or violated its own
policy with regard thereto.

167.    Defendant acted with deliberate indifference to Plaintiff's disability and related
needs.

168.    Rutgers, directly and/or through its agents, utilized criteria or methods of
administration that have the effect of subjecting Derrick, a qualified individual with a disability,
to discrimination on the basis of disability and/or that have the purpose or effect of defeating or
substantially impairing accomplishment of the objectives of its program with respect to Derrick.

169.    Derrick was discriminated against by Rutgers, directly and/or through its agents,
on the basis of his disability in the full and equal enjoyment of the goods, services, facilities,
privileges, advantages or accommodations of a place of public accommodation.

170.    Defendant's conduct constitutes a violation of Title II of the Americans with
Disabilities Act.

26

171.    As a result, Plaintiff is entitled to recover from Defendant Rutgers compensatory damages, attorneys' fees, costs, disbursements, and such other relief as the Court deems just and proper.

## ELEVENTH CAUSE OF ACTION

### SECTION 504 OF THE REHABILITATION ACT OF 1973
### AGAINST RUTGERS

172.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 171 as if fully set forth herein.

173.    Section 504 of the Rehabilitation Act of 1973 provides that "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

174.    Plaintiff is an individual who has been diagnosed with documented learning disabilities and related needs.

175.    Plaintiff is otherwise qualified to receive the benefit of the Rutgers basketball program and a Rutgers education.

176.    Plaintiff was denied the benefit of the Rutgers basketball program by Defendant, directly and/or through its agents, solely by reason of his disability.

177.    Rutgers University receives federal financial assistance.

178.    Defendant, because of Plaintiff's disabilities, directly and/or through its agents, denied Plaintiff reasonable modifications to accommodate Plaintiff's learning disability, and/or failed to engage in the evaluative process for reasonable modifications, and/or denied Plaintiff

the opportunity to participate in or benefit from Defendant's services, programs and activities, and subjected him to discrimination.

179.   Defendant acted with deliberate indifference to Plaintiff's disability and related needs.

180.   Defendant's conduct constitutes a violation of Section 504 of the Rehabilitation Act of 1973.

181.   As a result, Plaintiff is entitled to recover from Defendant Rutgers compensatory damages, attorneys' fees, costs, disbursements, and such other relief as the Court deems just and proper.

## TWELFTH CAUSE OF ACTION

## 42 U.S.C. § 1983
## AGAINST ALL DEFENDANTS

182.   Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 181 as if fully set forth herein.

183.   42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983.

184.   Plaintiff is a United States citizen.

185.   Defendants, directly and/or through their agents, under color of law deprived Plaintiff of his constitutional rights, including his rights to substantive due process under the Fourteenth Amendment of the United States Constitution.

186.    Defendants, directly and/or through their agents, acted with reckless and/or deliberate indifference to Plaintiff's constitutional rights and engaged in conduct which shocks the conscience.

187.    Defendants, directly and/or through their agents, deprived Plaintiff of his right to be free from severe physical, verbal, emotional and psychological abuse.

188.    Defendants, directly and/or through their agents, engaged in conscience shocking conduct which increased the risk of danger to Plaintiff by causing Plaintiff to be continuously subjected to Rice's abusive conduct.

189.    Defendants' conduct constitutes a violation of 42 U.S.C. § 1983.

190.    As a result, Plaintiff is entitled to recover from Defendants, jointly and severally, compensatory damages, punitive damages, attorneys' fees, costs, disbursements, and such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally as identified under each separate count of the Complaint, for compensatory damages, punitive damages (where applicable), interest, attorneys' fees, disbursements, costs and all further relief to which Plaintiff is entitled and which the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Please take notice that Plaintiff, Derrick Randall, demands a trial by Jury.

Dated: New York, New York
      December 6, 2013

              Respectfully submitted,

              /S/     Daniel S. Kokhba
              KANTOR, DAVIDOFF, MANDELKER,
              TWOMEY & GALLANTY, P.C.
              Daniel S. Kokhba
              Alan T. Gallanty
              Carrie E. Anderer
              *Attorneys for Plaintiff Derrick Randall*
              51 East 42nd Street, 17th Floor
              New York, NY 10017
              Tel: 212-682-8383

## <u>CERTIFICATION</u>

The undersigned hereby certifies that there are no other civil actions or arbitrations

pending in any Court or jurisdiction arising out of the facts and circumstances herein to the best

of my knowledge, information, and belief.

Dated: December 6, 2013

/S/_____ Daniel S. Kokhba_____
Daniel S. Kokhba