**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

| | | |
|---|---|---|
| DERRICK RANDALL, | : | |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | Civ. No. 13-cv-07354 (FLW)(DEA) |
| v. | : | |
| | : | |
| RUTGERS, THE STATE UNIVERSITY | : | |
| OF NEW JERSEY, et al., | : | |
| | : | |
| Defendants. | : | |

---

**WOLFSON, U.S. DISTRICT JUDGE:**

Before the Court is Defendant Mark P. Hershhorn's ("Hershhorn," or "Defendant") motion to dismiss Counts Nine and Twelve of the Complaint brought by Plaintiff Derrick Randall ("Randall," or "Plaintiff") against Hershhorn et al. For the following reasons, Hershhorn's motion is GRANTED.

### I.       Background

Derrick Randall was a student at Rutgers University ("Rutgers") and a player on the Rutgers's men's basketball team ("Rutgers basketball team") from the fall of 2011 to the spring of 2013. (Compl. ¶ 33). Randall suffers from learning disabilities, of which Randall claims Rutgers was aware and for which Rutgers agreed to make special accommodations.[1] (Compl. ¶¶ 37-38). While Randall was a member of the Rutgers basketball team, Defendant Michael Rice ("Coach Rice") was the coach. (Compl. ¶ 27). On April 2, 2013, the cable network ESPN released a video

---

[1] Plaintiff's Complaint does not specify what accommodations Rutgers agreed to make or in fact made. *See* Compl. The Complaint does allege that "Coach [Michael] Rice represented to [Randall's father] that Rutgers would provide [Randall] with the resources he needed, including a psychologist . . . ." (Compl. ¶ 40).

recording ("Video") of Coach Rice abusing players of the Rutgers basketball team, including Plaintiff. (Compl. ¶ 7). It was later revealed that Coach Rice had frequently abused members of the team, including Randall, both physically and emotionally. (Compl. ¶¶ 44-46). According to Plaintiff, such abuse was continuous and ongoing when Randall was a member of the Rutgers' men's basketball team. (Compl. ¶ 52).

Randall alleges that members of the Rutgers administration—including Mark P. Hershhorn, a member of the Board of Governors—knew of this abuse and failed to take any action to protect Rutgers basketball team players. (Compl. ¶¶ 67-74). The Video was allegedly brought to the attention of Timothy Pernetti, then the NCAA Director of Intercollegiate Athletics at Rutgers, as a result of a wrongful termination suit brought by Eric Murdock, the former Director of Basketball Player Development. (Compl. ¶ 67). On December 13, 2012, a Rutgers-commissioned internal report investigating the Video and its contents was released. (Compl. ¶ 73). That same day, Pernetti announced that Coach Rice would be suspended for three games. (Compl. ¶ 74). However, Pernetti did not publicly disclose any evidence or information regarding Coach Rice's abusive conduct. (Compl. ¶ 74). It was not until nearly four months later—on April 3, 2014, the day after ESPN aired footage from the Video—that Coach Rice was fired. (Compl. ¶¶ 76-79).

Randall brought suit against (1) Coach Rice; (2) Rutgers University; (3) Timothy Pernetti, the NCAA Director of Intercollegiate Athletics at Rutgers; (4) James Martelli, the Rutger's men's basketball team assistant coach; (5) Janine Purcaro, the Chief Financial Officer for Intercollegiate Athletics at Rutgers; (5) Mark P. Hershhorn, Chairman of the Rutgers University Board of Governors Committee on Intercollegiate Athletics and member of the Board of Governors; and (6) Robert Barchi, the President of Rutgers University (collectively, "Defendants"), alleging various

tort claims and violations of the New Jersey Law Against Discrimination ("NJLAD"), Americans with Disabilities Act, and his constitutional rights.

The Complaint's specific allegations as to Hershhorn are as follows: (1) "in December, 2012, Hershhorn viewed the Video[; (2)] Hershhorn did not take the matter to the full Board of Governors, nor did he take any other action." (Compl. ¶ 72).

Hershhorn filed this motion to dismiss the following two counts against him: Count Nine, which alleges liability pursuant to the NJLAD; and Count Twelve, which alleges violations of Plaintiff's substantive due process rights pursuant to 42 U.S.C. § 1983.

## II.     Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard: the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965. As the Third Circuit has stated, "[t]he Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating ... [a] claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 127 U.S. at 1965); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. . . . The pleading

3

standard is not akin to a probability requirement, . . . to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citations omitted)).

In affirming that *Twombly*'s standards apply to all motions to dismiss, the Supreme Court explained several principles. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1949. Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. U PMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). However, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings ... [although a] limited exception exists for documents that are integral to or explicitly relied upon in the complaint*." W. Penn Allegheny Health Sys., Inc. v. U PMC*, 627 F.3d 85, 97 n.6 (3d Cir. 2010) *cert. denied*, 132 S.Ct. 98 (2011) (citation and internal quotation marks omitted).

The Third Circuit has reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." *Id.* at 98. That said, the Rule 8 pleading standard is to be applied "with the same level of rigor in all civil actions." *Id.* (quoting *Iqbal*, 129 S.Ct at 1953).

### III.    Analysis

#### 1.    *Count Nine - Violation of New Jersey Law Against Discrimination*

In Count Nine of the Complaint, Plaintiff alleges that Defendants "engaged in intentional discrimination against Plaintiff because of his protected class, and failed to accommodate his needs

despite agreeing to do so." (Compl. ¶ 156). Hershhorn moves to dismiss this Count for failure to state a claim. First, Hershhorn alleges that he cannot be held liable under the NJLAD because he and Plaintiff are not in an employment relationship. In his reply, Hershhorn alternatively argues that he cannot be held liable under the NJLAD's public accommodation section because he is not an "owner, lessee, proprietor, superintendent, agent, or employee" of Rutgers as statutorily required under the NJLAD. Lastly, Defendant asserts that he cannot be held liable under an aiding and abetting theory of supervisory liability because inaction is insufficient conduct to meet such a standard.

### a. Public Accommodation

The Court construes Count Nine of the Complaint as alleging a cause of action for discrimination in a place of public accommodation pursuant to the NJLAD.[2] Defendant argues that this claim should be dismissed because he is not an actor covered under the statute. In opposition, Plaintiff argues that this claim should proceed because (1) Rutgers is a place of public accommodation, (2) Hershhorn is an agent of the university, and (3) Coach Rice clearly discriminated against Plaintiff. However, Plaintiff's arguments do not coincide with the statutory requirements for such a claim. N.J.S.A. § 10:5-4 states that "all persons shall have the opportunity to obtain . . . all the accommodations, advantages, facilities, and privileges of any place of public accommodation . . . without discrimination because of . . . disability." N.J. STAT. ANN. § 10:5-4. The NJLAD further prohibits "any owner, lessee, proprietor, manager, superintendent, agent, or employee, of any place of public accommodation [from] directly or indirectly refus[ing], withhold[ing] from, or deny[ing] to any person any of the accommodations, advantages, facilities

---

[2] As such, this Court will not address Hershhorn's argument whether he is Plaintiff's employer because it is irrelevant to the question of public accommodations liability under the NJLAD. *See* Def. Brief at 4-5. The Court will, however, address the separate question of whether Defendant was Coach Rice's supervisor for the purposes of aiding and abetting liability under the NJLAD. *See infra* at 7.

or privileges thereof, or [from] discriminat[ing] against any person in the furnishing of . . . on account of . . . disability." N.J. STAT. ANN. 10:5-12(f)(1).

Because the NJLAD is so broadly written, New Jersey and Third Circuit courts have looked to federal laws such as Title VII and the Americans with Disabilities Act for guidance in adjudicating discrimination claims. *See Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 70 (3d Cir. 1996). Claims for discrimination on the basis of disability are determined under the ADA standard, requiring that a plaintiff show:

> (1) he is a qualified person with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.

*Mutschler v. SCI Albion CHCA Health Care*, 445 F. App'x 617, 621 (3d Cir. 2011); *see also Disability Rights New Jersey, Inc. v. Velez*, 974 F. Supp. 2d 705, 730 (D.N.J. 2013); 42 U.S.C. § 12132.

Plaintiff has failed to state a claim for discrimination in a place of public accommodation against Hershhorn. While Randall has alleged facts to support his contention that he is a qualified individual with a disability and that he was discriminated against by Coach Rice, he has not alleged facts supporting his contention that Hershhorn specifically discriminated against him *because of* his disability. In fact, there is seemingly no connection in the Complaint between Hershhorn's alleged act—failure to circulate the Video of Coach Rice abusing Plaintiff—and Plaintiff's status as a member of a protected class. Plaintiff's membership in a protected class alone is not sufficient to state a claim under this section. *See Partovi v. Felician Coll.*, 2011 WL 867275, at *8 (N.J. Super. Ct. App. Div. Mar. 15, 2011) ("Although plaintiffs stated that [a named plaintiff] has a language-based disability, they did not allege that the disability was the basis for any

discriminatory conduct or ill-treatment by defendant or that defendant acted improperly toward her or denied her an accommodation because of her disability.").

### b. Individual (Supervisory) Liability

Nevertheless, an individual may be held liable under the NJLAD if he or she, "aid[s], abet[s], incite[s], compel[s] or coerce[s] the doing of any acts forbidden under the LAD." N.J. STAT. ANN. 10:5-12(e); *See also Tarr v. Ciasulli*, 181 N.J. 70, 83 (2004); *Doe v. Schwerzler*, 2008 WL 4066338, at *5 (D.N.J. Aug. 27, 2008) ("An individual may only be held liable under the NJLAD if he is an 'aider or abetter.'"). In order to state a claim for aiding and abetting of discrimination, a plaintiff must allege that:

> (1) the party whom the defendant aids . . . perform[ed a] wrongful act that cause[d] an injury; (2) the defendant [was] generally aware of his role as part of an overall illegal or tortious activity at the time that he provide[d] the assistance; and (3) the defendant . . . knowingly and substantially assist[ed] the principal violation.

*Tarr*, 191 N.J. at 84. The Third Circuit has set forth a number of factors that should be considered to determine if a defendant's actions substantially assisted the principal violator, namely: "'(1) the nature of the act encouraged, (2) the amount of assistance given by the defendant, (3) whether the defendant was present at the time of the asserted harassment, and (4) the defendant's relations to the others, and (5) the state of mind of the defendant.'" *Doe*, 2008 WL 4066338, at *5 (quoting *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 127 (3d Cir. 1999)). Crucially, the *Hurley* factors do not require a defendant take an affirmative act to substantially assist a principal violator. Indeed, claims of inaction may be actionable under the NJLAD, if the inaction "rises to the level of providing substantial assistance or encouragement." *Failla v. City of Passaic*, 146 F.3d 149, 158 n.11 (3d Cir. 1998) (declining to adopt a per-se rule that "failure to act cannot rise to aiding and abetting liability") (citing *Tyson v. Cigna Corp.*, 918 F. Supp. 836, 841 (D.N.J. 1996)).

7

Only supervisors may be held liable under an aiding and abetting standard as they have "a duty to act against harassment." *Hurley*, 174 F.3d at 126; *see also Tarr*, 181 N.J. at 84; *Herman v. Coastal Corp*., 348 N.J. Super. 1, 27 (App. Div. 2002) ("In addition to determining whether the employee can be held individually liable for his acts . . . that individual to be liable would have to hold a position of supervisor."). A supervisor can be held liable "when he breaches his duty through deliberate indifference to the harassing conduct." 2008 WL 4066338 at *7. Even so, "in the context of failure to act, [individual liability] 'requires active and purposeful conduct." *Id.*

Here, Hershhorn contends that Plaintiff's Complaint does not allege any facts demonstrating that Hershhorn was Coach Rice's supervisor for the purposes of the NJLAD. While the NJLAD does not provide a statutory definition of supervisor, the Court may look for guidance to Title VII, as has been traditionally done in other NJLAD cases. *See, e.g., Hurley*, 174 F.3d at 115 (affirming use of Title VII case law in creating jury charge for claim of hostile work environment); *Lehman v. Toys R Us, Inc.*, 132 N.J. 587, 600 (1993) ("In construing the terms of the LAD, this Court has frequently looked to federal precedent governing Title VII of the Civil Rights Act of 1964, . . . as 'a key source of interpretive authority.'"). For the purposes of Title VII, the Supreme Court has defined a supervisor as someone who "is empowered by [an] employer to take tangible employment actions against [an employee]." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2454 (2013).

Plaintiff has alleged facts that plausibly show that Hershhorn is Coach Rice's supervisor. Plaintiff alleges in the Complaint that Defendant is a member of the Board of Governors, and is the Chairman of the Board's Committee on Intercollegiate Athletics. As it is part of a state entity, the Rutgers Board of Governors is a creature of statute. *See* N.J. STAT. ANN. 18A:65 *et seq*. As such, the responsibilities and powers of the Board are clearly delineated, including the Board's

power to, "[i]n accordance with the provisions of the budget, . . . elect, appoint, remove, promote or transfer all corporate, official, educational and civil administrative personnel." N.J.S.A. 18A:65-25. Further, as the Chairman of the Committee on Intercollegiate Athletics, Hershhorn is likely to have significant authority over the Rutgers Athletic program and the program's staffing decisions. These facts are sufficient to allege at the motion to dismiss stage that Defendant may be treated as a supervisor for the purposes of aiding and abetting liability under the NJLAD.

However, the substance of Plaintiff's aiding and abetting claim—Hershhorn's inaction in the face of the damning Video in question—is insufficient to survive a motion to dismiss. Inaction may rise to aiding and abetting if "the individual knows of the principal's discriminatory conduct, knows that such conduct involves a breach of the principal's duty to the plaintiff and actually assists or encourages the unlawful act." *Jones v. Jersey City Medical Center*, 20 F. Supp. 2d 770, 775 (D.N.J. 1998) (citing *Failla*, 146 F.3d at 158-59). Here, the Complaint alleges that Hershhorn viewed the Video of Coach Rice abusing players and took no action in response. This allegation alone is not sufficient to support the allegation that Hershhorn aided and abetted Coach Rice under the standard espoused by *Failla*. *Id.* While the allegations may show that Hershhorn knew of Rice's conduct and knew it was a breach of his duty, the Complaint does not sufficiently address whether Hershhorn assisted or encouraged Coach Rice in any way. For example, in *Jones v. Ewing Twp. Bd. of Ed.*, this Court held that a defendant's knowledge of the principal violators' misconduct alone did not "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged'"; the plaintiff was, however, given leave to amend the complaint to address such deficiencies. 2010 WL 715554, at *6 (D.N.J. Feb. 26, 2010) (quoting *Iqbal*, 556 U.S. at 678). Similarly here, Count Nine will be dismissed without prejudice, and Plaintiff will be given

leave to amend the Complaint to address the insufficiencies with respect to his supervisory liability claim. *See id.*

For these reasons, the Court grants Defendant's motion to dismiss Count Nine with leave for Plaintiff to re-plead the supervisory liability portion of his claim.

### 2. *Section 1983 Claim for Violations of Plaintiff's Substantive Due Process Rights*

Count Twelve of the Complaint alleges violations of Plaintiff's Fourteenth Amendment substantive due process rights pursuant to 42 U.S.C. § 1983. Specifically, the Complaint alleges that the "[d]efendants . . . acted with reckless and/or deliberate indifference to Plaintiff's constitutional rights and engaged in conduct which shocks the conscience," and that defendants "engaged in conscious shocking conduct which increased the risk of danger to Plaintiff by causing Plaintiff to be continuously subjected to Rice's abusive conduct." (Compl. ¶¶ 186, 188). The Complaint further states that such actions "deprived Plaintiff of his right to be free from severe physical, verbal, emotional, and psychological abuse." (Compl. ¶ 187). Hershhorn contends that Plaintiff's Section 1983 claim must be dismissed because Hershhorn is entitled to qualified immunity as a matter of law.[3]

State actors are entitled to qualified immunity as a shield from Section 1983 claims when "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The Supreme Court has established a two-part test for determining whether a state actor is entitled to a defense of qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). This test asks "(1) whether the facts alleged by the plaintiff show the violation of a constitutional right; and (2) whether the right at issue was

---

[3] There is no question that as a member of the Board of Governors of Rutgers University, Hershhorn is entitled to raise the affirmative defense of qualified immunity—and Plaintiff does not contest this issue. *See* N.J. STAT. ANN. § 18A:65-12; *Wood v. Strickland*, 420 U.S. 308, 321-22 (1975).

clearly established at the time of the alleged misconduct." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (citing *Saucier*, 533 U.S. at 201).

While the Supreme Court has established that "qualified immunity questions should be resolved at the earliest possible stage of litigation," *Anderson v. Creighton*, 483 U.S. at 646 n. 6, the Court has noted that such questions can sometimes only appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Indeed, the Third Circuit has held that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009). *See also Coles v. Carlini*, 2012 WL 1079446, at *9 (D.N.J. Mar. 29, 2012). Questions of qualified immunity may only be resolved on a motion to dismiss "when the immunity is established on the face of the complaint," *Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006), in other words, where "the plaintiff's allegations [do not] state a claim of violation of clearly established law." *Mitchell*, 472 U.S. at 526. Accordingly, this Court will analyze whether Plaintiff has alleged a violation of clearly established law to determine whether it is appropriate to find Defendant is entitled to qualified immunity at this stage of the litigation.

The threshold test for determining whether Defendant meets the first prong of the *Saucier* qualified immunity analysis is to "identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Next, to determine whether Plaintiff has sufficiently pled that the constitutional right in question was infringed upon, the Court must determine whether Defendant's alleged actions "shock the conscience." In order to meet this standard, "[t]he defendant's actions must be 'an abuse of executive power so clearly unjustified by any legitimate objective as to be barred by the Fourteenth Amendment.'" *O'Donnell v. Simon*, 2007 WL 2159596,

at *12-13 (D.N.J. July 25, 2007) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998)). There is no clearly stated method through which courts should determine whether a defendant's conduct has shocked the conscience because "'deliberate indifference that shocks in one environment may not be so patently egregious in another.'" *Levin v. Upper Makefield Township*, 90 F. App'x 653, 661 (3d Cir. 2004) (quoting *Lewis*, 523 U.S. at 850). Thus, the relevant inquiry may "begin[] . . . [with] asking whether or not the objective character of certain conduct is consistent with our traditions, precedents, and historical understanding of the Constitution and its meaning." *Id.* (quoting *Lewis*, 523 U.S. at 857 (Kennedy, J., concurring)).

In the Complaint, Plaintiff alleges that he was deprived of his substantive due process right to be free from abuse, which can be inferred from the substantive due process right of freedom in one's bodily integrity. It is well-established that the right to bodily integrity is included in the Fourteenth Amendment's guarantee of substantive due process. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008); *see also Ingram v. Wright*, 430 U.S. 651, 672-74 (1977) ("While the contours of this historic liberty interest in the context of our federal system of government have not been defined precisely, they always have been thought to encompass freedom from bodily restraint and punishment."). Therefore, Plaintiff has successfully pled an infringement of a constitutional right.

However, Plaintiff does not allege facts sufficient to show that Hershhorn's conduct shocks the conscience and thus violated Plaintiff's substantive due process rights. Therefore, Plaintiff's claims does not meet the first prong of *Saucier*'s qualified immunity test. Plaintiff's claim that Hershhorn's actions "shock the conscience" appear to be merely legal conclusions, which need not be considered by the Court on a motion to dismiss. *See Fowler*, 578 F.3d at 210. In that regard, the only well-pled and applicable factual allegation as to Defendant Hershhorn in this matter is the

12

contention that Hershhorn viewed the Video prior to Coach Rice's return from suspension and failed to circulate the Video to individuals such as his fellow members of the Board of Governors.[4] (Compl. ¶ 74).

Crucially, the Complaint does not allege any facts showing that Hershhorn acted affirmatively, as is required for State conduct to violate an individual's substantive due process right in this context. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989) (generally limiting the State's affirmative constitutional duty to "assume some responsibility for [an individual's] safety and general well-being" to situations where "the State takes a person into its custody and holds him there against his will")[5]; *Morrow v. Balaski*, 719 F.3d 160, 166 (3d Cir.), *as amended* (June 14, 2013), *cert. denied*, 134 S. Ct. 824 (2013) ("The Supreme Court has long established that '[a]s a general matter, . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.") (quoting *DeShaney*, 489 U.S. at 197); *see also DiBartolo v. Bachman*, 2003 WL 22317987, at *5 (E.D. Pa. Oct. 7, 2003) (citing *DeShaney* in declining to find that the defendant, an off-duty police officer, "violated a constitutionally secured right by failing to intervene in the bar altercation and potentially prevent the violence that led to [the plaintiff's] injuries"). Further, Plaintiff's failure to

---

[4] Plaintiff contends that the following allegations leveled at Defendants in general should apply to Hershhorn as well: (1) concealing evidence of defendant Rice's pervasive and continuous abusive conduct from [Plaintiff's] family and the public at large, (2) knowing and/or recklessly allowing abusive conduct to continue, (3) leaving [Plaintiff] to somehow fend for himself against the person with complete authority and control over him and his athletic scholarship, and (4) allowing defendant Rice to resume his coaching duties despite clear evidence of misconduct and abuse." Pl.'s Brief at 17. However, these allegations are simply variations on the primary allegation against Hershhorn—that he failed to take action after viewing the video of Coach Rice abusing Plaintiff.

[5] The limited scope of affirmative duty described in *DeShaney* is known as the "special relationship" exception to the general rule that the Constitution does not mandate that the State undertake affirmative conduct to ensure an individual's safety and well-being. *Morrow*, 719 F.3d at 166. "Just as a public high school does not have a special relationship with its minor children sufficient to create a constitutional duty to protect those students from the harmful acts of [third parties], neither does a publicly-funded university with regard to its adult students who voluntarily elect to enroll in the university." *Frazer v. Temple Univ.*, --- F.Supp. 2d ---, ---, 2014 WL 2547076, at *6 (E.D. Pa. June 5, 2014).

allege any other relevant facts makes the potential causational inference—that had Hershhorn intervened, Plaintiff's abuse would have been mitigated—too attenuated for the Court to entertain.[6] *See* Compl.

Thus, Plaintiff has failed to sufficiently allege that Defendant violated his substantive due process rights, and Defendant is entitled to qualified immunity on Count Twelve.

### a. State-Created Danger

While not addressed by the parties in their briefings, Plaintiff's Complaint apparently alleges a claim for state-created danger. *See* Compl. ¶ 186-88 ("Defendants . . . acted with reckless and/or deliberate indifference to Plaintiff's constitutional rights . . . [and] engaged in conscience shocking conduct which increased the risk of danger to the Plaintiff."). This theory of liability is an exception to the general rule discussed above that "'a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.'" *Morrow*, 719 F.3d at 166 (quoting *DeShaney*, 489 U.S. at 197). In order to state a claim under the state-created danger doctrine, a Plaintiff must show:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006). However, even if Plaintiff's Complaint appears to bring such a claim, Plaintiff has not pled sufficient facts to meet either the

---

[6] For example, Plaintiff makes no mention of abuse that Coach Rice may have perpetrated against him between December 29, 2012—after Hershhorn had allegedly viewed the video and Coach Rice returned from his three-game suspension—and April 3, 2013, when Coach Rice was fired, apart from a vague and conclusory statement that the abuse "continued throughout his sophomore season." *See* Compl. ¶ 8. Further, Plaintiff has not alleged how Hershhorn's failure to circulate the video could have prevented any such abuse during that four-month period.

second or fourth prong of the test. Further, assuming Defendant's assertion of qualified immunity under Section 1983 extends to this theory of liability, Defendant would be entitled to qualified immunity because Plaintiff's allegations do not meet the first prong of the *Saucier* analysis.

The second prong of the test for establishing a state-created danger claim requires that the defendant act with a level of culpability that shocks the conscience. In cases like the one at hand, where "deliberation is possible and officials have the time to make 'unhurried judgments,' deliberate indifference is sufficient." *Id.* "'[D]eliberate indifference is a stringent standard of fault, [and] require[s] proof that a [state] actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997). While Plaintiff's Complaint asserts that Defendants acted with deliberate indifference to Plaintiff's rights, he provides no factual assertions in support of this assertion as it applies to Hershhorn. Indeed, Plaintiff's assertion of deliberate indifference is the type of conclusory statement that must be stricken on a motion to dismiss. *See Fowler*, 578 F.3d at 210. Defendant's apparent indifference after viewing the Video does not meet the stringent requirement that a state actor's culpability shocks the conscience.

The fourth prong of the state-created danger theory is also not satisfied. The doctrine requires that the defendant's act be the "but-for" cause of the plaintiff's injury. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 433 (3d Cir. 2006). "It is important to stress, for present purposes, that under the fourth element of a state-created danger claim, 'liability under the state-created danger theory is predicated upon the states' *affirmative acts* which work to the plaintiffs' detriments in terms of exposure to danger.'" *Bright*, 443 F.3d at 282 (quoting *D.R. by L.R. v. Middle Bucks Area Vo. Tech. Sch.,* 972 F.2d 1364, 1374 (3d Cir. 1992) (en banc). Here, Plaintiff's allegation that Defendant viewed the Video of Coach Rice's abusive behavior and took no further action is

insufficient to plead an affirmative act under a theory of state-created danger. Not only does this allegation fail to allege that Hershhorn's failure to act caused Plaintiff's harm; the Complaint also fails to show "it was the act or omission of [Hershhorn] that directly placed the victim in harm's way." *Morse*, 132 F.3d at 915 (finding that a school's failure to lock a door was not a sufficient affirmative act under the state-created danger doctrine). Therefore, Plaintiff has failed to plead sufficient facts to establish the violation of a constitutional right under the state-created danger theory.

Thus, to the extent that Plaintiff asserts the state-created danger theory of liability under Section 1983 in Count Twelve of his Complaint, this Court grants Hershhorn's motion for qualified immunity on that theory, as well.

## IV.    Conclusion

The Court grants Hershhorn's motion to dismiss Count Nine of Plaintiff's Complaint and dismisses the claim without prejudice with leave to amend the supervisory liability portion of the claim. The Court additionally grants Hershhorn's motion to dismiss Count Twelve of Plaintiff's Complaint because Defendant has shown he is entitled to qualified immunity based on the face of the Complaint. An appropriate order shall follow.

Dated:        November 12, 2014

                                        /s/ Freda L. Wolfson
                                        FREDA L. WOLFSON, U.S.D.J.